DEPARTMENT OF PUBLIC SAFETY,
State of Alaska, Appellant,

v.

PUBLIC SAFETY EMPLOYEES
ASSOCIATION and Hugh
Harrison, Appellees.

No. S–926.

Supreme Court of Alaska.

Feb. 20, 1987.

Joseph W. Geldhof, Asst. Atty. Gen. and Harold M. Brown, Atty. Gen., Juneau, for appellant.

William K. Jermain, Jermain, Dunnagan & Owens, Anchorage, for appellees.

OPINION

Before RABINOWITZ, C.J., MATTHEWS, COMPTON and MOORE, JJ., and PEGUES, Superior Court Judge.*

* Pegues, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

MOORE, Justice.

This appeal concerns the proper standard of judicial review of an arbitration award. The Department of Public Safety appeals from a trial court order which vacated parts of a labor arbitration award. The trial court found (1) that the arbitrator's interim remedy of suspension without pay constituted "gross error"; (2) that the arbitrator exceeded the scope of his authority by retaining jurisdiction over the matter until the criminal charges had been resolved; and (3) that the plaintiffs were public interest litigants and therefore entitled to full attorney fees as prevailing parties. We hold that the trial court erred on each of these issues.

## I. FACTS AND PROCEEDINGS

In the summer of 1981, Alaska State Trooper Hugh Harrison took a post in St. Mary's. St. Mary's has exercised the local option to ban the importation of alcoholic beverages. In April of 1982, the Alaska Department of Public Safety (Department), the employer of the Alaska State Troopers, received a report that Harrison had imported liquor into St. Mary's, a felony under State law.[1] Pursuant to a search warrant, Harrison's residence was searched on April 18, 1982 and a large quantity of beer and liquor was found. On April 29, 1982, the Department discharged Harrison. Harrison was subsequently indicted on May 13, 1982 for one count of felony importation of alcoholic beverages, one count of felony tampering with evidence, and one count of misdemeanor tampering with evidence.

After Harrison was discharged, Public Safety Employees Association (PSEA) filed a grievance on Harrison's behalf. PSEA is the labor organization which represents the Alaska State Troopers in all labor-management relations. The Department and PSEA have entered into a Collective Bargaining Agreement (CBA) which sets forth rights and responsibilities of the Department and its employees. PSEA claimed that Harrison's discharge violated various provisions of the CBA and the Department's Operating Procedures Manual (OPM).

When PSEA's grievance could not be resolved through conciliation, it was submitted to an arbitrator pursuant to CBA Article 10, Section 5 which provides for binding arbitration of "disciplinary grievances involving discharge." The issue before the designated arbitrator, Joseph Kane, was: "Did the State violate the just cause provision of the [collective bargaining] agreement when on April 29, 1982, it terminated the grievant [Harrison] from his position as an Alaska State Trooper? If yes, what is the remedy?"[2]

The arbitrator heard arguments by the Department and PSEA on August 3 and 4, 1982 and rendered initial findings of fact and decisions in an Intermediate Award issued on October 1, 1982. The Intermediate Award stated that Harrison's April 29, 1982 discharge had been untimely in that "it was the intent of the Alaska Legislature to grant the grievant a hearing before discharge inspite [sic] of the nature of the misconduct."[3] The arbitrator found that Harrison had not been granted such a hearing prior to discharge and accordingly, ordered that Harrison's discharge be reduced to suspension without pay.

██ The arbitrator issued his Supplemental Award on November 18, 1982, after Harrison had been convicted in his criminal trial. In the Supplemental Award, the arbitrator wrote he found "no evidence to support the contention that the grievant was discharged without cause." Accordingly, the Supplemental Award concluded that

---

**1.** AS 04.16.200(e)(2).

**2.** The record does not indicate whether the parties stipulated to this statement of the issue or whether the arbitrator fashioned the issue from his reading of the grievance.

**3.** It is unclear whether the arbitrator found this "legislative guarantee" in the OPM, the CBA, or the common law. In any case, the decision was consistent with all documents relating to the discharge of State Troopers, as well as with Alaska's common law. *See, e.g., Storrs v. Municipality of Anchorage,* 721 P.2d 1146 (Alaska 1986).

Harrison's discharge was timely and appropriate as of November 18, 1982. This conclusion was based on evidence presented during the August arbitration hearing, as well as on Harrison's jury verdict.[4]

After the arbitrator had announced his Intermediate Award, but before his Supplemental Award was rendered, Harrison and PSEA initiated proceedings in the superior court by filing a Complaint to Vacate Arbitration Award. Upon Harrison's and PSEA's motion for summary judgment, the trial court vacated portions of the Intermediate Award but did not disturb the arbitrator's finding that Harrison's April 29, 1982 discharge had been untimely. The trial court reasoned that the arbitrator's remedy of reinstating Harrison but ordering suspension without pay pending a determination of just cause for discharge was "gross error as it is contrary to the CBA." Accordingly, the trial court vacated the interim remedy. Furthermore, the trial court opined that the arbitrator had exceeded his authority by "retaining jurisdiction over the matter until the criminal charges had been resolved." Thus, according to the trial court, the Supplemental Award could be given no effect. The trial court also granted PSEA's and Harrison's motion for full attorney's fees under Alaska's "public interest" doctrine.

## II. DISCUSSION

### A. *Arbitration Award*

#### 1. Standard of review

■ In our disposition of this appeal, we begin by reaffirming our oft-stated deference to arbitration proceedings. The common law and statutes of Alaska evince "a strong public policy in favor of arbitration."[5] *University of Alaska v. Modern*

*Construction, Inc.*, 522 P.2d 1132, 1138 (Alaska 1974). Arbitration allows parties to resolve their disputes through relatively expeditious and inexpensive processes. Parties to a dispute will have little incentive to enter into arbitration unless arbitration awards are allowed to lie in repose. "As a result, we have followed a policy of minimal court interference with arbitration." *City of Fairbanks Municipal Utilities System v. Lees*, 705 P.2d 457, 460 (Alaska 1985).

■ As a matter of policy and law, we are loathe to vacate an award made by an arbitrator. In *Nizinski v. Golden Valley Electric Association, Inc.*, 509 P.2d 280, 283 (Alaska 1973), we dealt with the nonstatutory standard of review of labor-management arbitration awards and held that such awards are not subject to judicial review absent a showing of an arbitrator's gross negligence, fraud, corruption, gross error or misbehavior. An arbitrator's interpretation of a contract will not be disturbed if that interpretation is reasonable in light of the contract language and the context in which the contract was made. Collective bargaining agreements, like any other kind of contract, may be susceptible of varied constructions. A court may not vacate an arbitrator's interpretation of a collective bargaining agreement in favor of its own merely because it finds its own to be better reasoned.

In light of our policy of minimal court interference with arbitration, we find that the trial court erred in vacating a portion of the arbitration award. First, we hold that the interim remedy of suspension without pay is consistent with a reasonable interpretation of all documents pertaining to the Department's disciplinary practices, including the Department's OPM and the

---

4. The Intermediate Award also stated that "an administrative investigation shall be held at the conclusion of [the criminal] proceedings." The record does not reflect that such an administrative investigation was held prior to the Supplemental Award. We do not find that this omission vitiates the Supplemental Award ordering discharge as an administrative investigation was made unnecessary by the conviction.

5. We note that Alaska's Arbitration Act, AS 09.-43.010 *et seq.*, does not apply to this case. AS 09.43.010 states that the provisions of the act "do not apply to a labor-management contract unless they are incorporated into the contract by reference ..." Thus, this case is governed by the common law "non-statutory standard of review." *Nizinski v. Golden Valley Electric Assoc.*, 509 P.2d 280, 283 (Alaska 1973).

CBA. Second, we hold that the arbitrator acted within his prerogative when he continued his jurisdiction of the arbitration until he decided whether or not just cause for Harrison's discharge was established.

### 2. Interim remedy of suspension without pay

██ The Department argues that the arbitrator's interim remedy of suspension without pay "was not precluded by the [CBA]." Hence, the Department requests us to reinstate the arbitrator's interim remedy. Harrison and PSEA argue that "the trial court was empowered to vacate" the interim remedy portion of the award because it constituted "gross error." At the August 3 and 4 arbitration hearing, relevant portions of the OPM and the CBA were introduced into evidence by the Department and PSEA. The Supplemental Award cited OPM Sections 114.010(C) and 114.010(G) as authority for the interim rem-

edy. These sections provide that "[m]andatory suspension is required when any [employee] is indicted for a crime" and that "[a]ll suspensions will be without pay." The arbitrator construed the above OPM sections to give him authority to order a pre-indictment suspension of a State Trooper when that trooper was suspected of committing a felony.[6]

In proceedings before the trial court, PSEA and Harrison contended that CBA Article 7, Section 1, entitled "Administrative Investigations," superseded the OPM sections the arbitrator relied upon in ordering interim suspension without pay. In pertinent part, Article 7, Section 1 provides that "[i]f during any investigation, the Employer determines it is necessary to relieve a member of regularly-assigned duties, the member shall be temporarily reassigned to 'administrative' duties with full pay ..."[7]

6. The arbitrator's construction of the CBA and the OPM is consistent with sound policy which dictates that when a law enforcement official is reasonably suspected of committing a felony, his employer should have the prerogative to suspend him from active duty of any kind. The Department's brief intimates that Harrison was discharged after a pre-indictment investigation by the Department was well underway.

7. Article 7, Section 1 of the CBA reads:
   (a) Members shall be entitled to a fair and impartial investigation when in the course of the member's scope of employment, the Employer or member deems an investigation is necessary. The members shall assist and expedite administrative investigations and, when requested by investigative officers, furnish information or give statements as witnesses within the guidelines specified below.
   (b) Association representation is mandatory at each stage of any investigation, whether formal or informal, unless the member specifically waives in writing to the representative such representation. "Disciplinary Proceeding" is defined as any action taken against a member by a superior officer that may affect his working conditions, hours or wages, including written reprimands. Minor infractions such as uniform violations or personal appearance are excepted where on-the-spot admonishments are warranted.
   (c) The member shall be presumed innocent until proven guilty and the burden of proof shall be on the Employer.
   (d) Definition of "Administrative investigation" shall be construed as: Any time the Employer initiates an investigation to deter-

mine the possibility of, or to establish a basis for discipline, suspension or dismissal, whether such investigation or interrogation is initiated by an internal, external, formal or informal complaint.
   (e) When a complaint is received against any member which is likely to result in an investigation, the Department shall normally require a written signed statement by the complainant. In the event no signed statement can be obtained from the complainant, the individual receiving the complaint shall prepare a full signed statement of his own with regard to the complaint. The Department shall promptly notify the member and the Association of such complaints. Said notification shall be followed by written notification including such written signed statements. The notification shall include the names of all complainants in the matter.
   (f) A member and the Association, after being notified, will have at least twenty-four (24) hours to prepare for an interview.
   (g) The interview will take place at a location mutually agreed to.
   (h) The member and the Association shall be informed of the rank, name and command of any officer involved in conducting the investigation, as well as the rank, name and command of any officer who is conducting the interview and the identity of all persons present during the interview.
   (i) With the exception of patrol car crashes, discharge of firearms, personal injury accidents, Workers' Compensation claims, death or serious injuries caused by the members or other situations as may be mutually agreed to

CBA Article 31 further provides that "[i]f there is any conflict between the terms of this Agreement ... [and] the OPM ... the terms of this Agreement shall, in all cases, be controlling." In vacating the interim remedy, the trial court found that the CBA controlled in Harrison's arbitration and that the arbitrator's reliance upon the OPM was impermissible.

We cannot agree with the trial court that the interim remedy constituted "gross error." The arbitrator found that the reassignment to administrative duties provision, CBA Article 7, Section 1, "[d]oes not apply to situations where criminal investigations are involved...." The provisions of CBA Article 7, Section 1 apply to "Ad-ministrative Investigations." The arbitrator found that an investigation of an employee's alleged criminal conduct was not an "administrative investigation" but a "criminal investigation." Accordingly, the arbitrator concluded that CBA Article 7 was not controlling. The arbitrator's interpretation of the inapplicability of the CBA was reasonable. There are several reasons for this. First, section 1 of Article 7 is entitled "Administrative Investigations." Thus, unless the context should otherwise require, and it does not, all investigations referred to in the body of section 1 should be understood to be administrative investigations. Second, administrative investiga-

by the Employer and the Association, and subsequent to identification of: 1) complaint, 2) complainant, 3) subject member in an expeditious manner, a member and the Association shall be given a maximum of two (2) days to respond to a complaint prior to initiation of the investigation. In case of an anonymous complaint, the individual receiving the complaint shall be considered the complainant for purpose of this Article.

(j) A member's immediate family shall not be interviewed unless parties to the complaint or at the specified request of the member.

(k) A member may request and receive an administrative investigation pertaining to any allegations or rumors which may adversely affect his credibility, integrity or reputation.

(*l*) A member shall be required to answer only those questions specifically relating to such member's duties and responsibilities within the scope of his employment.

(m) At the member's option, he may be accompanied by an Association representative(s). One (1) Association representative to be identified by the Association at the start of the interview shall be allowed to question the member during the interview. Questioning shall be conducted in no more than one-half (½) hour segments for no more than four (4) hours per day. Each one-half (½) hour segment shall be followed by a one-half (½) hour rest period. The rest period can be waived by the member.

(n) The complete interview shall be recorded mechanically or stenographically. The member shall be given the exact copy of all written statements executed. The member shall be provided an exact copy of all recordings within seven (7) days of the interview and a certified transcript within twelve (12) days of the interview, unless extended by mutual agreement.

(*o*) There shall be no off-the-record questions asked of the member.

(p) Submission to polygraph examination shall not be mandatory. Refusal to submit to such examination shall not be grounds for disciplinary action.

(q) Should information be obtained during the course of an administrative investigation which would tend to lead an investigator to believe that a criminal violation of the law has been committed by a member, the member shall be immediately advised of his constitutional rights.

(r) If during any investigation, the Employer determines it is necessary to relieve a member of regularly-assigned duties, the member shall be temporarily reassigned to "administrative" duties with full pay, benefits and retention of his classification until the investigation has been concluded and a course of action determined. This temporary reassignment will not be considered as a disciplinary measure, and shall not exceed thirty (30) days unless mutually agreed to.

(s) No materials or reports involving the allegations shall be entered into any personnel file of the member where the investigation has exonerated the member and/or the allegations were determined to be unfounded.

(t) A member who has been under investigation and the Association shall be informed by the most expeditious method available when the investigation has been completed and course of action has been determined. If the original notification is other than written, a follow-up communication to the member and Association will be provided by certified mail.

(u) Member's rights under this Article shall be extended to probationary employees after completion of six (6) months of their initial probationary period with the exception of dismissals. Upon successful completion of their initial probationary period, full member's rights shall be extended to the member.

tion is itself defined in subsection (d) as an investigation for the purposes of "discipline, suspension or dismissal." The purpose of criminal prosecution is not mentioned in this definition. Third, various rights are afforded the member under investigation which would be inappropriate in many criminal investigations. For example, under subsection (e) when a complaint is received against a member, the member is entitled to immediate notification and under subsection (i) he has a right to respond to a complaint "prior to initiation of the investigation." Moreover, under subsection (j), members of the officer's immediate family may not be interviewed. Further, under subsection (r), if it is necessary to relieve a member of his regularly assigned duties, the member shall be temporarily reassigned to administrative duties with full pay and benefits; this temporary reassignment cannot exceed thirty days. It is the rare criminal prosecution which is resolved within thirty days and it is difficult to believe that the parties to the collective bargaining agreement meant to require the department to place a policeman who is under investigation or indictment for a serious crime back on regular duty within thirty days of the initiation of the criminal investigation against him. Trial courts do not have the prerogative to second-guess the arbitrator where, as here, the arbitrator's remedy can be reasonably reconciled with express language governing disciplinary proceedings. Thus, the interim remedy was permissible and should not have been disturbed by the court below.

### 3. Interpretation of issue submitted for arbitration

The trial court also found that the Supplemental Award which ordered Harrison's dismissal could not be given effect. The court below wrote that "[i]t was gross error for [the arbitrator] to retain jurisdiction beyond deciding the issue with which

he was charged." Apparently, the trial judge believed that the arbitrator had exceeded the scope of his authority in deciding that Harrison's discharge, as of November 18, 1982, was appropriate and timely. The trial judge found that the issue before the arbitrator limited his arbitration to a very narrow issue—whether Harrison's discharge was permissible on April 19, 1982.

The issue for arbitration was: "Did the State violate the just cause provision of the [collective bargaining] agreement when on April 29, 1982, it terminated the grievant [Harrison] from his position as an Alaska State Trooper. If yes, what is the remedy?" We concede that the issue may be read so strictly so as to confine the arbitrator to a scrutiny of the circumstances as they existed on April 29. The arbitrator, however, took a more expansive view of the issue submitted for arbitration. The arbitrator interpreted the issue to pose the question: Was the state justified in its decision to terminate Harrison for cause? Having framed the issue as such, the arbitrator was presented with two questions to answer. First, was Harrison's discharge justified by cause on April 29, 1982? Second, was just cause for Harrison's discharge established subsequent to April 29, 1982?

The scope of the arbitration was proper given the submitted issue. Arbitrators need not be bound by the narrowest interpretation of the issue presented to them. We hold that an arbitrator's interpretation of the question presented for arbitration, like an arbitrator's contract interpretation, should not be subjected to plenary review. If the arbitrator's interpretation of the question posed for arbitration in a labor-management dispute is reasonable in light of the circumstances and does not constitute gross error, a reviewing court should not interfere with the subsequent arbitration award.[8]

---

**8.** If the arbitrator had adhered to a strict interpretation of the submitted issue and limited his arbitration to a scrutiny of the April 29, 1982 discharge, we would likewise defer to this construction of the issue for arbitration. Here, however, the arbitrator foresaw that once he invalidated Harrison's first discharge, a second discharge was likely to follow. The propriety of

In *Anchorage Medical and Surgical Clinic v. James,* 555 P.2d 1320, 1324 (Alaska 1976), we held that "the arbitrators' interpretation of what is submitted to them is entitled to significant weight." There are two reasons why we hold that the deference which we accord to an arbitrator's contract interpretation should also be given to an arbitrator's interpretation of the submitted issue. First, subjecting interpretations of arbitration submissions to plenary review would emasculate our intent to foster recourse to arbitration proceedings for dispute resolution. We believe that if parties to a dispute were allowed to assail an unfavorable arbitration award on spurious procedural grounds, arbitration would become less attractive and disputants would resort more often to litigation. Second, a deferential standard of review of submission interpretation forecloses the possibility that Alaska's courts will become mired in numerous disputes involving the exact scope of submission in arbitration proceedings. *See Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3rd Cir.1982).

The view we adopt here is consistent with the law of several federal circuits. The Second Circuit has held that "[a]ny doubts about the scope of the submission agreement should be resolved in favor of coverage. The language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings." *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2nd Cir.1978) (citation omitted). The Third Circuit has held that "the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted." *Mobil Oil,* 679 F.2d

at 302. The Fourth Circuit has held that "the agreement to arbitrate particular issues need not be express. It may be implied or established by the conduct of the parties." *International Chemical Workers Union, Local # 566 v. Mobay Chemical Corp.,* 755 F.2d 1107, 1110 (4th Cir. 1985). The Fifth Circuit has held that it is "for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties." *International Association of Machinists, District 776 v. Texas Steel Co.,* 639 F.2d 279, 382 (5th Cir.1981) (citation omitted).

■ We are mindful that an arbitrator may go too far in his arbitration. Where, however, the scope of the arbitrator's award could have been reasonably foreseen given the issue submitted and where the issues decided by the arbitrator are arguably arbitrable under the terms of the contract, sound policy counsels us not to interfere with the arbitration. Accordingly, the trial court's decision to nullify the Supplemental Award is reversed. The arbitrator's decision that Harrison's discharge was appropriate and timely as of November 18, 1982 will be given effect.[9]

### B. Attorney Fees

■ In the proceedings below, Harrison and the PSEA were awarded full attorney fees as prevailing public interest litigants. Harrison and the PSEA contend that "an award of full attorney's fees would effectuate the strong public policy in favor of arbitration." In *Oceanview Homeowners Association, Inc. v. Quadrant Construction and Engineering,* 680 P.2d 793, 799 (Alaska 1984), we stated the four criteria we look to in identifying public interest suits:

(1) whether the case is designed to effectuate strong public policies; (2) whether,

---

the second discharge was likely to give rise to a second arbitration hearing. We can see no reason favoring bifurcation of the arbitration process. To us, it seems reasonable for the arbitrator to have gone beyond the narrow scope of the submitted issue and to have answered all the questions which he felt were within the contemplation of the submitted issue.

9. The Supplemental Award stated that "the discharge shall be sustained." In light of the arbitrator's earlier decision that Harrison's April 29, 1982 discharge was untimely, we can only conclude that the arbitrator intended Harrison to be discharged as of the date of the Supplemental Award, November 18, 1982.

if the plaintiff succeeds, numerous people will benefit from the lawsuit; (3) whether only a private party could be expected to bring the suit; and (4) whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance.

We have stated in our opinions that we favor the repose of arbitration awards. Harrison and PSEA brought their suit to vacate an arbitration award which they found unfavorable. To urge a trial court to interfere with a legitimate arbitration award does not effectuate strong public policy. Furthermore, both continued employment and back pay were significant economic incentives for Harrison's suit. If Harrison had prevailed, he would have been the primary beneficiary of the action. We believe that the case was designed more for Harrison's personal benefit than it was designed to effectuate strong public policies.

We hold that the trial court erred in awarding any attorney's fees to Harrison and PSEA. This determination must be reversed because Harrison and PSEA did not prevail. Further, they are not immune from an award of attorney's fees against them because they do not qualify as public interest litigants.

The decision of the superior court is REVERSED insofar as it vacated the arbitration award and the case is REMANDED with directions to the superior court to affirm the arbitrator's decision.

BURKE, J., not participating.

RABINOWITZ, Chief Justice, with whom, COMPTON, Justice, joins, dissenting in part.

I cannot agree with the court's holding that the superior court erred in vacating the arbitrator's interim remedy of suspension without pay.

Our cases have established that the applicable non-statutory standard of review of arbitration decisions is that of "gross error" on the part of the arbitrator.[1] We have defined "gross error" to mean "that only those mistakes which are both obvious and significant justify interference with an arbitrator's award."[2] I believe that this standard was satisfied in the case at bar and thus would affirm the superior court's vacation of the arbitrator's Intermediate Award.[3]

In his Intermediate Award, the arbitrator declined to make a final determination as to whether just cause existed to discharge Harrison. As an interim remedy, the arbitrator "reduce[d] the [Department's] order of dismissal to an order of suspension without back pay pending the hearing on the charges of misconduct in the Superior Court." The superior court agreed with Harrison's and PSEA's contention that article 7, section 1(r) of the collective bargaining agreement was explicit as to the appropriate employment status of a Department employee during the pendency of an investigation for misconduct.[4] In reaching this

---

1. *Nizinski v. Golden Valley Elec. Ass'n,* 509 P.2d 280, 283 (Alaska 1973).

2. *City of Fairbanks v. Rice,* 628 P.2d 565, 567 (Alaska 1981) (footnote omitted).

3. In *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960), the Supreme Court stated in part:
   Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

4. Article 7, section 1(r) of the collective bargaining agreement states in part that:
   [i]f during *any investigation,* the Employer determines it is necessary to relieve a member of regularly-assigned duties, the member shall be temporarily reassigned to "administrative" duties *with full pay,* benefits and retention of his classification until the investigation has been concluded and a course of action determined. This temporary reassignment will not be considered as a disciplinary measure, and shall not exceed thirty (30) days unless mutually agreed to.

conclusion, the superior court reasoned that the remedy provided for in the arbitrator's Intermediate Award did not "draw its essence from" the collective bargaining agreement; that the arbitrator did not have wide latitude to fashion an appropriate remedy because the agreement was "neither silent nor ambiguous on the point in controversy;" and that the proper remedy was expressly provided for within the four corners of the agreement.[5]

In my view the superior court correctly resolved the issue. The criminal investigation in the case at bar served as the "administrative investigation" contemplated by the collective bargaining agreement;[6] the arbitrator concluded that because of the criminal prosecution and conviction of Harrison there was a basis ("just cause") for the disciplinary action (discharge) taken against him by his employer. While there may have been a pre-indictment investigation by the Department prior to Harrison's discharge, the arbitrator determined that this investigation did not provide the basis for the discipline, since he vacated the discharge pending conclusion of the criminal proceeding.

Given the foregoing circumstances, I do not believe that the employee's right to an administrative investigation and the corresponding bargained-for protections should be deemed eliminated if there is a criminal investigation but no independent administrative investigation. The collective bargaining agreement guarantees the employee full pay pending the determination of the basis for discipline. It would be unreasonable to find the agreement inapplicable when the basis for discipline is being determined in circumstances where criminal charges have been filed.

See *City of Fairbanks v. Rice*, 628 P.2d 565, 567 (Alaska 1981).

**5.** Article 31 of the collective bargaining agreement states:

If there is any conflict between the terms of this Agreement, the Personnel Rules, memoranda or the OPM, or other directives, the terms of this Agreement shall, in all cases, be controlling.

Article 10, section 5 of the agreement states in part, that:

The arbitrator shall not be empowered to rule contrary to, to amend or add to, or to eliminate any of the provisions of this Agreement.

**6.** Article 7, section 1(d) states that:

Definition of "Administrative Investigation" shall be construed as: Any time the Employer initiates an investigation to determine the possibility of, or to establish a basis for discipline, suspension or dismissal, whether such investigation or interrogation is initiated by an internal, external, formal or informal complaint.