**SEA STAR STEVEDORE
COMPANY, Appellant,**

v.

**INTERNATIONAL UNION OF
OPERATING ENGINEERS,
LOCAL 302, Appellee.**

**No. S–2498.**

Supreme Court of Alaska.

Feb. 24, 1989.

William F. Mede, Owens & Turner, P.C.;
Kris Cassity, Anchorage, for appellant.

Fredric R. Dichter, Anchorage, for appellee.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

## OPINION

COMPTON, Justice.

Sea Star Stevedore Company (Sea Star) appeals from an order of the superior court arising out of an action to enforce a labor arbitration award.[1] In denying cross motions for summary judgment by Sea Star and the International Union of Operating Engineers, Local 302 (the union), the superior court remanded three issues to the arbitrator. Sea Star contends the superior court erred in remanding to the original arbitrator issues concerning a subsequent discharge of the employee.

## I. FACTS AND PROCEEDINGS

William Floyd was employed as a mechanic by Sea Star when he was discharged for violations of the company's sick leave policy and insubordination. Until his discharge Floyd had been assigned to work in the van and was generally able to earn more overtime than mechanics assigned to the shop.[2]

Pursuant to a collective bargaining agreement between Sea Star and the union, the union grieved Floyd's discharge, and requested that Floyd be reinstated to full employment by Sea Star. An arbitration hearing was held before Vern Hauck, Ph. D. Dr. Hauck defined the issue before him as: "[w]hether the discharge of William Floyd violated the collective bargaining agreement[.] If so, what remedy should apply." In his award of September 30, 1985, Dr. Hauck ordered Floyd reinstated "with full benefits as requested by the union less one week for the forced medical leave."

Sea Star offered to reinstate Floyd to a mechanic's position. The union requested, and Sea Star agreed, to hold the position open until November 1, as Floyd was employed elsewhere. Floyd returned to Sea Star and was assigned to the shop.

The union maintains that contemporaneous with Floyd's return to work it notified Sea Star that Sea Star was not in compliance with Dr. Hauck's award.[3] The union's position is that compliance required Floyd be assigned to the van. Sea Star denied that it was not in compliance, maintaining that "mechanic" is not defined by location, shop or van. Further, it maintained that Floyd was given a mechanic's position per his original dispatch classification.

The union, by letter, asked Dr. Hauck for clarification of his September 30 award. In a letter dated January 3, 1986, Dr. Hauck clarified his award by stating that Floyd was to be reinstated to his "exact same position."[4]

In the interim, Floyd was laid off as part of a cost cutting move by Totem Ocean Trailer Express (TOTE).[5] TOTE ordered Sea Star to cut two full time mechanic positions. Sea Star complied by eliminating one mechanic from the van and two from the shop. This was done by moving Floyd's replacement, Peter Frey,[6] to the

1. This case arises under 29 U.S.C. § 185. Therefore, state law may be applied only so far as it is compatible with the federal labor-management common law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102–103, 82 S.Ct. 571, 576–577, 7 L.Ed.2d 593, 598–599 (1962).

2. Sea Star employed mechanics in two locations. Mechanics assigned to the field or van worked in Sea Star's yard and on Totem Ocean Trailer Express ships. Mechanics assigned to the shop worked primarily in Sea Star's shop. On ship-days mechanics assigned to the van generally worked from 6 a.m. until 9 p.m.; mechanics assigned to the shop generally worked from 6 a.m. until 6 p.m.

3. According to Sea Star two identical letters exist. Sea Star alleges it received an undated signed letter protesting Floyd's assignment to the shop. It alleges the union introduced, in support of "Opposition to Defendant's Cross Motion for Summary Judgment," a dated but unsigned copy of the same letter.

4. Sea Star denies that it knew of the communications between the union and Dr. Hauck.

5. Sea Star provides services for TOTE. Sea Star and TOTE have a cost plus agreement. This agreement apparently lets TOTE regulate expenses and employment levels at Sea Star.

6. Peter Frey replaced Floyd in the van after Floyd's initial discharge. The union asserts Frey was dispatched to Sea Star on May 15, 1985, primarily to replace Floyd. Sea Star maintains that Frey was dispatched on May 7, 1985, to replace an injured employee. Frey had subsequently filled Floyd's van position and was shifted to the shop when the work force was cut back.

shop and laying off two shop mechanics, Floyd and Gary Liebeg.

The union notified Sea Star by letter that it would arbitrate Floyd's economic layoff. Sea Star paid the back wages due Floyd pursuant to Dr. Hauck's clarification letter, but refused to reinstate Floyd to his prior position. The union then threatened to sue if Floyd was not reinstated. Sea Star maintained that the economic layoff was a separate arbitrable issue. The union sued.

The union sought to enforce the arbitration award by having Floyd reinstated to his position in the van. It moved for summary judgment, and Sea Star filed a cross-motion for summary judgment. The superior court denied the cross-motions for summary judgment and remanded three issues to Dr. Hauck. The court found that Dr. Hauck had not resolved the following three issues:

> First, arbitrator Vern Hauck failed to address the collective bargaining agreement interpretation question regarding the meaning of "mechanic" for purposes of any reinstatement order. Second, the arbitrator did not consider whether the second termination of Floyd is appropriate and/or consistent with Hauck's remedies, and if not, what additional remedies Floyd is entitled to receive. Finally, the court does not consider the January 2, 1986 [sic] letter from arbitrator Hauck to the parties to be a formal amendment of the Arbitration Award and Order dated September 30, 1985.

Dr. Hauck heard these issues. In his decision, he concluded that "mechanic" meant assignment to the van, that Floyd's second termination was *"not* appropriate" and was *"not* consistent" with his award of September 30, 1985, and that the January 3, 1986, letter was not an amendment to the original award. (Emphasis in original). Final judgment was entered by the superior court and Sea Star timely appealed.

## II. DISCUSSION

Sea Star contends that it was error for the trial court to remand to Dr. Hauck issues regarding the appropriateness of Floyd's economic layoff. It argues that such issues were not within the scope of those submitted to Dr. Hauck regarding Floyd's initial discharge.

The union argues that the remand was proper. The arbitrator retained jurisdiction to clarify his award and decide whether Floyd had been reinstated within the meaning of the September 30, 1985, award. It reasons that because the arbitrator found that Sea Star had not fully complied with the award, the arbitrator could order reinstatement as a remedy, even though it would have the effect of nullifying Sea Star's subsequent economic layoff of Floyd.

The union's argument is correct in part. It is appropriate to remand an arbitration award to the arbitrator for clarification or interpretation. *American Fed'n. of State, County & Mun. Employees, Local Lodge No. 1803 v. Walker County Medical Center*, 715 F.2d 1517, 1519 (11th Cir.1983); *Local 2222, Int'l Bhd. of Elec. Workers v. New England Tel. & Tel.*, 628 F.2d 644, 648–49 (1st Cir.1980).

In the instant case it was not error to remand the award to Dr. Hauck to permit him to interpret what was meant by the word "mechanic." Dr. Hauck was ordered to interpret whether "mechanic" meant placing Floyd in either the shop or van or only in the van. Whether the award was ambiguous or the issue not fully resolved, remand on this issue was correct. Thus, it was appropriate for the arbitrator to fashion a remedy consistent with his clarification. However, as discussed below it was not appropriate for the arbitrator to reach the merits of the subsequent economic layoff.

The union argues that Dr. Hauck could select a remedy for Sea Star's failure to place Floyd in the van. This empowered him to decide the appropriateness and/or consistency of the subsequent layoff with his prior award. By ordering immediate reinstatement of Floyd after remand, Dr. Hauck reached the issue of the economic layoff. This raises the question of Dr. Hauck's jurisdiction to hear issues related

to the economic layoff, an issue not originally submitted to him.

Questions concerning the arbitrator's jurisdiction to hear an issue are for the court to decide. *Kodiak Oilfield Haulers v. Local 879, Hotel, Motel, Restaurant, Camp Construction Employees*, 641 P.2d 11, 13 (Alaska 1982). This same rule was followed in *Frederick Meiswinkel, Inc. v. Labor's Union Local 261*, 744 F.2d 1374, 1376 (9th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985) (hereinafter *Local 261*). The inquiry is confined to whether the reluctant party agreed "to give the arbitrator power to make the award he made." *Id.* at 1377 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960)). As this is a question of contract interpretation, and there is no conflict in the evidence, this court may use its independent judgment in reviewing the trial court's decision to remand issues related to the economic layoff to the arbitrator. *See Kodiak Oilfield Haulers*, 641 P.2d at 13.

The union contends that Dr. Hauck found Sea Star had not complied with the September 30 award. Therefore, as a remedy he could order immediate reinstatement as he did here.

Arbitrators are given broad powers to fashion remedies on submitted issues. *Hughes Aircraft Co. v. Electronic & Space Technicians, Local 1553*, 822 F.2d 823, 827 (9th Cir.1987). However, an arbitrator does not have the power to reach the merits of a grievance not submitted to him. *Id.*

In the instant case the sole issue submitted, as defined by Dr. Hauck, was whether the initial discharge was violative of the collective bargaining agreement and,

if it was, what remedies were available, if any. After remand Dr. Hauck ordered the immediate reinstatement of Floyd, finding the economic layoff to be inconsistent with his prior award. By ordering immediate reinstatement, Dr. Hauck reached the merits of the economic layoff. The propriety of the economic layoff was not before him in the original arbitration proceeding. Because the economic layoff issue was never submitted to him, Hauck had no power to reach the merits of that issue.[7] *Hughes Aircraft*, 822 F.2d at 827; *Local 261*, 744 F.2d at 1377. The economic layoff should have been submitted to a separate grievance and arbitration process. That process is what the parties to the collective bargaining agreement bargained for. *United Paperworkers Int'l Union v. MISCO, Inc.*, 484 U.S. 29, ——, 108 S.Ct. 364, 371, 98 L.Ed.2d 286, 299 (1987).

■ Dr. Hauck concluded that Sea Star had not complied with his September 30 award. However, it is unnecessary to decide whether Sea Star complied.[8] Even if Sea Star did not fully comply with the original award, the propriety of the economic layoff should have been submitted to a subsequent arbitration. *See Detroit & Midwestern States Joint Bd., Amalgamated Clothing Workers of Am. v. White Tower Laundry and Cleaners*, 353 F.Supp. 168 (E.D.Mich.1973).

*White Tower* is factually similar to the instant case. There the employee had been discharged, and the union filed a grievance which resulted in the arbitrator ordering the employee reinstated with back pay. *White Tower*, 353 F.Supp. at 168. White Tower paid the back pay, but due to loss of business transferred the employee to a new department when she returned to work. *Id.* at 169. The employee refused the

---

7. In *Department of Pub. Safety v. Public Safety Employees Ass'n*, 732 P.2d 1090 (Alaska 1987), we held that the arbitrator's interpretation of the issue before him was to be given "significant weight." *Id.* at 1097 (citations omitted). Here, the question is not the arbitrator's interpretation of the issue, but whether, after he arrived at an interpretation of the issue submitted, he went beyond his authority in his later actions. Dr. Hauck clearly defined the issue to be "[w]hether the discharge of William Floyd violated the col-

lective bargaining agreement." If so, what remedy should apply?"

8. In a similar context, we have held that reinstatement for purposes of compliance occurred where the employee was tendered back pay and terminated despite an arbitrator's award ordering reinstatement of the employee. *See Kodiak Oilfield Haulers*, 641 P.2d at 13–14.

transfer and was discharged a second time. *Id.* The union then sought enforcement of the arbitrator's award, claiming White Tower had not complied with the original award. *Id.*

The court found that White Tower had lost business and was acting in good faith. *Id.* The court observed that the transfer issue was a separate issue subject to arbitration as provided by the collective bargaining agreement. *Id.* at 169–70.

In the instant case, Floyd was reinstated to a position with duties identical to those of his prior position; only the location was different. Sea Star, as the union observes, believed it had complied with the arbitrator's award. Sea Star notified Floyd on September 30 that he would be reinstated, and Floyd reported to work at Sea Star on November 1.[9]

Although Floyd complained about the assignment to the shop, Sea Star did not lay him off until TOTE ordered that two mechanics be eliminated. This economic layoff occurred approximately six weeks after Floyd returned to Sea Star.[10] There is no finding that Sea Star acted in bad faith when laying off Floyd for economic reasons. Because the bargaining agreement mandated a grievance process, the propriety of Floyd's subsequent economic layoff should have been arbitrated separately regardless of whether Sea Star had complied with the original award. *See White Tower,* 353 F.Supp. at 169–170.

The union also argues that Sea Star had the burden of proving that Floyd would have been laid off if Sea Star had fully complied. This argument is premised on *Chicago Newspaper Guild v. Field Enterprises,* 747 F.2d 1153 (7th Cir.1984). In *Field Enterprises,* the employee was ordered reinstated after an improper discharge. *Id.* at 1154–55. The employer

paid back wages and then placed the employee on layoff status. *Id.* at 1155. The employer contended that it had complied, as the employee would have been laid off anyway when the Daily News closed. *Id.*

Observing that subsequent employment decisions are ordinarily issues independent from reinstatement, the court found that the subsequent employment action was not independent. *Id.* at 1156 n. 5. The court could not find evidence to support Field Enterprises' contention that the employee would have been laid off with closure of the Daily News, because the evidence did not exist. *Id.* at 1157. Further, the court was troubled by Field Enterprises' failure to disclose information to the arbitrator regarding the pending closure of the Daily News and its potential impact on an award.[11] *Id.* The rationale applicable in *Field Enterprises* is inapposite here. The record does not indicate that Sea Star had prior knowledge of the economic layoff, nor was it shown that evidence regarding Floyd's economic layoff is impossible to obtain. Further, Floyd was not immediately laid off after having been given backpay; he worked six weeks before the economic layoff. Therefore, *Field Enterprises* is distinguishable from the instant case.

### III. CONCLUSION

Based on the foregoing, we REVERSE the trial court to the extent it remanded to the arbitrator the issue of the appropriateness and/or consistency of the subsequent layoff with the original award. In all other respects the trial court is AFFIRMED.

---

**9.** The union sought full employment for Floyd in its August 21 letter to Hauck. The union did not ask specifically for reinstatement to the van.

**10.** In a letter dated December 30, 1985, the union notified Sea Star it would arbitrate Floyd's economic layoff. The union pursued court enforcement after it received Hauck's clarification letter on January 3, 1986.

**11.** The court also observed that Field Enterprises' interpretation of the award was clearly erroneous. *Field Enterprises,* 747 F.2d at 1156. Here it is not certain that Sea Star's interpretation of Hauck's award was clearly erroneous.