**ALASKA PUBLIC EMPLOYEES ASSOCIATION and Dan Lawn, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Appellee.**

No. S–7195.

Supreme Court of Alaska.

Dec. 27, 1996.

William K. Jermain and Eugenia R.G. Richardson, Jermain, Dunnagan & Owens, Anchorage, for Appellants.

Patrick J. Gullufsen and John B. Gaguine, Assistant Attorneys General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *FACTS AND PROCEEDINGS*

In 1989 Daniel Lawn was head of the Prince William Sound District Office in Valdez. This District Office was part of the South-central Regional Office in the Division of Environmental Quality of the Department of Environmental Conservation (DEC). In May 1989, Lawn was involved in a confrontation regarding identity badges with Exxon security personnel. As a result, Lawn received a letter of reprimand and, later, was removed from his supervisory role at the District Office, though his pay status was unchanged.

The Alaska Public Employees Association (APEA) filed a grievance on Lawn's behalf. The grievance went to arbitration. A hearing was held before arbitrator Edward Hales. In his decision, Hales found that Lawn had been demoted because "being relieved of the supervisory role does reasonably imply the movement to a 'lower position.'" Hales additionally found that the altercation constituted just cause for discipline. However, he concluded that the demotion was improper because it constituted a second disciplinary action for the same incident, since Lawn had already been disciplined by a letter of reprimand.

In his award Hales ordered that "The Grievant shall be reinstated to his former position with a supervisory role at the Valdez District Office or to a mutually agreeable position." Prior to Hales' award, DEC had placed Lawn in a position which encompassed some supervisory responsibilities. As a consequence, DEC argued that Lawn's assignment was already in compliance with the award, "as it is an environmental engineer position in the Valdez office with some supervisory duties."

APEA did not agree that Lawn's assignment was consistent with the arbitrator's award because the position did not include any oversight responsibilities for the Alyeska

pipeline oil terminal located in Valdez. In May 1992, APEA wrote to Hales, complaining that DEC was not in compliance with the award, and requesting a response. Hales responded to both parties, stating:

> The award states in pertinent part that, "the grievant *shall* be reinstated to his former position with a supervisory role at the Valdez District Office or to a mutually agreeable position." Therefore, unless there is a mutual agreement between Mr. Lawn and the Department of Environmental Conservation (Department) concerning his acceptance of a position other than "his former position with a supervisory role at the Valdez office," the Department is not in compliance with the letter, intent, or spirit of the January 31, 1992 award issued in this matter.

DEC then answered Hales, explaining its position on the issue of whether it had complied with the award. Hales did not respond to DEC's letter. He later explained that he had assumed, based on DEC's letter, that the dispute had been "amicably settled."

In December 1992, APEA and Lawn sought enforcement of the arbitrator's award in the superior court. The superior court remanded the case to Hales for clarification of his award. On remand, Hales clarified his remedy and ordered that "the State shall reassign Lawn to his former oversight responsibility at the Valdez Terminal."

After Hales issued his clarified award, both parties renewed their motions for summary judgment. The superior court granted DEC's motion, denied Lawn's motion, and declined to enforce Hales' award on the grounds that Hales had exceeded the scope of his authority as arbitrator. The superior court ruled in the belief that Hales' award would require DEC to nullify some of the structural reorganization it had undergone in 1991.[1] The superior court held that, in regard to the amended award, Hales had failed to consider the management rights of the state by engaging in "transferring duties from one office to another in the context of a major reorganization of a state agency." The superior court thereafter entered final judgment.

APEA moved for reconsideration, which was subsequently denied. This appeal followed.

## II. DISCUSSION

### 1. The Meaning of Arbitrator Hales' Award

The primary issue in this case is the meaning of Arbitrator Hales' award.[2]

---

**1.** In 1991, in order to improve oversight of oil spill problems, DEC reorganized. The part of the reorganization relevant to this case involved the creation of a new region within the Department.

Previously, the South-central Regional Office had included the districts of Mat–Su Borough, Kenai Peninsula, Anchorage/Western, and Prince William Sound, where Lawn worked. The Prince William Sound District Office, which was in Valdez, was responsible, among other things, for oversight of the Alyeska pipeline terminal in Valdez.

The 1991 reorganization created a new region—the Pipeline Corridor Region—designed to deal with large-scale oil spill issues. The Pipeline Corridor Region covered the pipeline corridor from Prudhoe Bay (including the production facilities) down to the Alyeska terminal in Valdez. The Pipeline Corridor Region has several district offices, including one in Valdez, which now has the oversight responsibility for the Valdez pipeline terminal.

The Prince William Sound District Office became the Valdez Field Office in the Mat–Su Borough District of the South-central region. It no longer had responsibility for the pipeline terminal, though most of its other duties apparently remained the same.

Thus, there are now two Valdez offices: The Valdez District Office of the Pipeline Corridor Region, and the Valdez Field Office of the Mat–Su Borough District of the South-central Region. Lawn is assigned to the latter.

**2.** Where the meaning of an arbitrator's award is in dispute,

> remand is appropriate only where the award is patently ambiguous. "Where the parties dispute the meaning of an award the court's role is to examine the award and determine whether remanding it to the [arbitrator] 'is necessary to clarify precisely what the Court is being asked to enforce.'" *Zephyros Maritime Agencies, Inc. v. Mexicana de Cobre, S.A.*, 662 F.Supp. 892, 895 (S.D.N.Y.1987) (quoting *Oil, Chemical & Atomic Workers Int'l Union, Local 4–367 v. Rohm & Hass, Texas, Inc.*, 93 Lab. Cas. p. 13,278, 1981 WL 2362 (S.D.Tex.1981), *aff'd per curiam*, 677 F.2d 492 (5th Cir.1982)). Where the true intent of an arbitrator is apparent, an allegedly ambiguous award should not

The parties interpret the award differently. DEC argues that the award means that the responsibility for oversight of the Alyeska pipeline oil terminal in Valdez must be moved from the Pipeline Corridor Region Office (PCRO) to the Valdez Field Office of the Mat–Su District of the South-central Region. Thus, Lawn, in his capacity as head of the Valdez Field Office, would have to be given additional duties—i.e. oversight of the Alyeska pipeline terminal—in addition to the duties currently assigned him as head of the Valdez Field Office.

APEA, on the other hand, asserts that Hales did not order any reshuffling of authority among DEC offices, but rather ordered that Lawn himself be transferred to a position which already, under DEC's own reorganized structure, has oversight authority over the Alyeska pipeline terminal.[3]

DEC's entire argument on this point is as follows:

> The last sentence of Hales' amended award orders the state to "reassign Lawn to his former oversight responsibility at the Valdez Terminal." ... This award says nothing about giving Lawn a job in the Valdez office of the PCRO, even though the amended award indicates that Hales was aware of the restructuring and of the fact that there was a PCRO office in Valdez. It should therefore not be interpreted in that way. Instead it should be interpreted as requiring that Lawn, in his capacity as head of the VFO [Valdez Field Office], was to be given additional duties relating to the terminal, in addition to his ordinary duties as VFO head.

DEC's argument is unconvincing. DEC takes a single sentence from the arbitrator's award, and, because that particular sentence is, by DEC's own assessment, neutral in helping determine whether DEC's or APEA's interpretation of the award is correct, concludes that it should be interpreted as requiring DEC to rescind part of its structural reorganization.

Even this isolated sentence which DEC quotes is not neutral. Hales ordered that "the state shall reassign Lawn to his former oversight duties at the Valdez Terminal," not that DEC "shall assign duties to Lawn." If anything is to be moved by this text, it is Lawn, not the duties.

A complete reading of Hales' findings further supports the position that Hales' decision focused on where Lawn will be located, rather than where the duties will be. Hales distinguishes between the PCRO Valdez District Office and the Valdez Field Office of the Mat–Su District.[4] He points out that Lawn has been assigned to the Valdez Field Office. Then, he goes on to state that "the assertion made in the [DEC] letter ... appears to be contrary to the evidence when [DEC] suggests that no position is available in Valdez similar to Lawn's former duties." We think it is clear from this that Hales is addressing the issue of which of the currently available positions best matches Lawn's pre-demotion position, and that Hales is not synthesizing a new position out of the Valdez Field Office head position supplemented by oversight responsibilities for the Alyeska pipeline terminal shifted over from PCRO.

be resubmitted to the arbitrator for clarification. *United Steelworkers of America, Local 12886 v. ICI Americas Inc.*, 545 F.Supp. 152, 154 (D.Del.1982).
*International Bhd. of Elec. Workers, Local 1547 v. City of Ketchikan*, 805 P.2d 340, 344 (Alaska 1991) (alteration in original).
The superior court's grant of summary judgment is reviewed *de novo. Dayhoff v. Temsco Helicopters*, 848 P.2d 1367, 1369 (Alaska 1993).

3. DEC acknowledges that APEA's position is, and has been, that Hales' award assigned Lawn to the PCRO. In characterizing APEA's position, DEC quotes from, and then correctly explains, an earlier APEA/Lawn brief: " 'Arbitrator Hales has reassigned Mr. Lawn to his former responsibili-

ties of overseeing the Valdez Terminal. The position is presently held by Steve Provant.' As noted above, Provant at the time was the head of the Valdez office of the PCRO."

4. It should be noted that in his original award, Hales ordered that Lawn be placed in the "Valdez district office." When this award was issued, DEC had already reorganized, and the only "Valdez District Office" was the Valdez District Office of the PCRO. There was no Valdez District Office in the South-central Region, just a Valdez Field Office of the Mat–Su District Office. This too indicates that the Valdez District Office of the PCRO is the office where Lawn was placed by Hales' award.

### 2. Arbitrator Hales' Authority to Order that Lawn Be Reinstated to the Position Most Closely Matching Pre-Demotion Duties

■ DEC argues that, if Hales' award did contemplate that Lawn be installed as the head of the Valdez office of the PCRO, then Hales was exceeding his authority. Its argument is as follows:

The job of head of the Valdez office of the PCRO did not exist when Lawn was, according to Hales, "demoted." It was a job created in 1991, as part of the reorganization. Staffing new positions is a management right under Article 5 of the collective bargaining agreement, and Hales could not order Lawn placed in this new job because it encompasses some of the responsibilities that Lawn had as Prince William Sound district office head prior to the reorganization.

However, DEC's argument does not address the question of whether an arbitrator has the power only to reinstate someone to his previously held position title, or the power to reinstate someone to the position which is most similar to the one he held before the wrongful demotion. The duties, if not the title, of "the job of head of the Valdez office of the PCRO" did exist when Lawn was demoted. Lawn was performing those duties.

DEC assumes that an arbitrator is limited to returning Lawn to the position which is the nominal successor of his previous position, and may not inquire into which job is the true successor of Lawn's previous job. Hales found that assignment to the Valdez Field Office was not reinstatement, but that assignment to the Valdez Office of the PCRO was reinstatement since that office was assigned oversight responsibility for the Alyeska pipeline terminal in Valdez. He based this factual finding on a functional analysis of Lawn's former position and both new positions.

Hales possessed the authority to consider the content of a job rather than just the position title. In *Sea Star Stevedore v. International Union of Operating Engineers, Local 302*, 769 P.2d 428 (Alaska 1989), we held that it was permissible for the superior court to remand a case to an arbitrator for the purpose of clarifying whether by ordering a worker reinstated as a "mechanic" the arbitrator meant simply that the worker should be placed in a position with that title,[5] or, instead, that the worker should be returned to the position with the same duties and responsibilities he held before his wrongful termination. *Sea Star*, 769 P.2d at 430. It follows that the arbitrator had the authority to define the worker's former job by function, not just by his former title.

This is consistent with case law acknowledging an arbitrator's broad discretion in fashioning a remedy. We have stated: "There is ample authority for the proposition that arbitrators generally have authority to fashion any remedy necessary to the resolution of the dispute." *Board of Educ. v. Ewig*, 609 P.2d 10, 12 (Alaska 1980). We therefore conclude that Hales did not exceed his authority in ordering that Lawn be reinstated to the Valdez District Office of the PCRO, rather than to the Valdez Field Office of the Mat–Su District.

### 3. The Superior Court's Conclusion that Placing Lawn in the PCRO Would Have the Effect of Negating the State's Reorganization

■ In its Decision and Order granting DEC's motion for summary judgment, the superior court wrote: "Placing [Lawn] in the PCRO would have the effect of reclassifying his job under the reorganization, negating the State's attempt to reorganize the operation for legitimate reasons."[6]

---

5. Sea Star had two types of "mechanic," with the same title but different assignments and responsibilities.

6. In this order the superior court did discuss, in another context, whether it substituted its findings of fact for the arbitrator's findings regarding whether the award has the effect of dismantling,

to some extent, the DEC reorganization. This discussion is entirely in the context of whether moving oversight authority of the Alyeska terminal to the Valdez Field Office is beyond Hales' power, and has nothing to do with moving Lawn to the Valdez office of the PCRO. Since we hold that the arbitrator's award did not attempt to

Arbitrator Hales, in his amended award following remand from the superior court, stated: "[I]n spite of the reorganization of the regional offices within DEC in the summer of 1991, the oversight responsibility for the Alyeska Terminal in Valdez is still being performed but by the PCRO district office in Valdez." Then, after addressing the effects of the reorganization, Hales found that

with Lawn's considerable experience in the oversight activity in Valdez, it is clear that the reassignment of him to his former responsibility would be of benefit and in the best interest of the State. Further, the utilization of Lawn in the oversight responsibility at Valdez does appear to be in harmony with the reorganization of the DEC regions.

APEA argues that the superior court's finding that "Placing him in the PCRO would have the effect of ... negating the State's attempt to reorganize the operation" is in conflict with Arbitrator Hales' finding that the placement of Lawn in the Valdez office of the PCRO "does appear to be in harmony with the reorganization of the DEC regions." [7]

DEC does not dispute APEA's contention that the superior court's finding conflicts with Hales' finding. DEC states:

Hales concluded that "the utilization of Lawn in the oversight responsibilities at Valdez does appear to be in harmony with the reorganization of the DEC regions." If this nebulous statement is seen as a finding of fact, the superior court did seem to disagree, as evidenced by the statement quoted in footnote 19 ["Placing (Lawn) in the PCRO would have the effect of reclassifying his job under the reorganization."].

■■■■ Arbitrator Hales' statement is indeed a finding of fact. Hales spent several pages of his amended award decision discussing the DEC reorganization before coming to the conclusion that his award would be in harmony with the reorganization. Thus, it

appears that the superior court did substitute its findings of fact regarding the effect of the award on the DEC reorganization for the findings of Hales. In a case arising out of a contract not subject to the Uniform Arbitration Act, an arbitrator's findings of fact are reviewed only for gross error. *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989); *see Public Safety Employees Ass'n, Local 92 v. State*, 895 P.2d 980, 984 (Alaska 1995). Gross errors are "only those mistakes which are both obvious and significant." *Id.* Hales' finding was not gross error. Therefore, the superior court's finding, contrary to Hales', that the assignment of Lawn to the PCRO would negate DEC's reorganization, is reversed.

#### 4. *Possible Public Policy Violation in Hales' Award*

DEC argues that Hales' award violates public policy in a way which renders it unenforceable. However, DEC's argument that the award commits such a violation is based entirely on the violation of the "policy ... that decisions as to how to organize a department, what duties to assign the units within a department, and what duties to assign to positions in a unit are executive branch management prerogatives."

This policy is put at issue only if, as DEC asserts, "Arbitrator Hales essentially ordered ADEC to transfer a duty back to a position from which the duty had been removed pursuant to the legitimate exercise of the executive's ... authority to reorganize departments and reassign duties." However, we have held that Hales did not "order[ ] ADEC to transfer a duty...." Therefore, the public policy argument is irrelevant and need not be addressed.

### III. *CONCLUSION*

The question of primary importance in this appeal is what Arbitrator Hales' award means. Hales found that to accomplish a

---

shift authority or duties among offices, this portion of the superior court's order is not relevant.

7. The superior court appears to have based its finding, at least partially, on its belief that "there is no ... discussion of the reorganization issue" in the arbitrator's award. The superior court

was incorrect in this belief. Hales spent most of four pages out of his seven page amended award discussing the reorganization. The portion of his award quoted above illustrates that he made specific findings on this issue.

true reinstatement Lawn would have to be placed within a post reorganization—existing position in the PCRO Valdez office. This remedy did not constitute a negation of the DEC's reorganization and was well within Hales' powers as arbitrator. The judgment of the superior court is REVERSED. This case is REMANDED with instructions to the superior court to enter an order granting APEA's motion for summary judgment.

FABE, J., not participating.