Joanne SIDNEY, Appellant/Cross–Appellee,

v.

ALLSTATE INSURANCE COMPANY, Appellee/Cross–Appellant.

Nos. S–12083, S–12084.

Supreme Court of Alaska.

Jan. 11, 2008.

Rehearing Denied July 29, 2008.

Leonard T. Kelley, Kelley & Canterbury, LLC, Anchorage, for Appellant/Cross–Appellee.

Barry J. Kell, Call, Hanson & Kell, P.C., Anchorage, for Appellee/Cross–Appellant.

Before: FABE, Chief Justice, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A passenger was injured in an automobile accident and entered into settlement with the driver's insurance carrier for a $50,000 *"Coughlin"* policy limits settlement—the face limits of the driver's policy, but without additional add-ons of attorney's fees or prejudgment interest. The passenger then pursued coverage with her own underinsured motorist (UIM) insurer. Her insurer disputed the amount of damages and the parties proceeded to arbitration. Following entry of an arbitration award in the passenger's favor, her carrier paid the amount of the award

less the $50,000 settlement. The passenger requested that the superior court confirm the full amount of the arbitration award, arguing that her carrier had failed to raise the issue of the $50,000 settlement at arbitration and claiming that the carrier was therefore not entitled to an offset. The superior court ultimately allowed the carrier to reduce its UIM payment by the amount of the settlement, but ordered it to pay prejudgment interest and attorney's fees on the $50,000. The passenger appeals the reduction of the arbitration award, the court's calculations of prejudgment interest and fees, and the court's refusal to award her enhanced fees. Her insurer cross-appeals and claims the court erred in requiring it to pay add-ons on the settlement, finding the passenger to be the prevailing party, and awarding her attorney's fees.

Because UIM coverage does not apply until underlying liability coverage is exhausted, we conclude that the superior court correctly reduced the arbitration award by $50,000. But because we also conclude that the passenger elected to forgo add-ons on the settlement from the liability insurer, we reverse the court's order finding her insurer liable for those sums in all but one respect: The passenger is entitled to a pro rata award of attorney's fees because her litigation efforts associated with the settlement procured a benefit for her insurer. We affirm the order of the superior court in all other respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Joanne Sidney was riding as a passenger in a car driven by William Sidney on January 13, 2000. The Sidneys' vehicle became disabled, and William Sidney got out of the vehicle in an attempt to divert traffic. A car driven by Musa Kanteh struck the Sidneys' vehicle, injuring Joanne Sidney.

Joanne Sidney was covered under an Allstate automobile liability policy that provided $50,000 in liability coverage, $25,000 in medical payments coverage, and underinsured motorist protection of $50,000 per person/$100,000 per accident. Sidney also maintained a personal umbrella policy with All-

state that provided motor vehicle liability coverage and statutory UIM coverage. That policy provided a $1,000,000 liability limit. Following the accident, Allstate paid Sidney $25,000 under the medical payments coverage of her automobile liability policy, exhausting her medical payments coverage and resulting in a subrogation claim by Allstate against the driver of the other vehicle, Musa Kanteh.

Kanteh maintained a liability policy with Safeco Insurance Company that provided $50,000 in coverage. In May 2003 Sidney settled her claims against Kanteh by entering into a settlement with Safeco, whereby Safeco paid Sidney $25,000 and assumed responsibility for satisfying the $25,000 medical payments lien asserted by Allstate ("the $50,000 settlement"). Sidney tendered the settlement offer to Allstate, stating she intended to accept the offer "thereby triggering UIM coverage with Allstate."

Following the liability settlement with Safeco, Sidney pursued UIM benefits from Allstate. Sidney and Allstate failed to reach agreement and they proceeded to arbitration. A one-day arbitration hearing was held on August 15, 2004. The arbitration panel ultimately entered an award of $118,432.[1]

## B. Proceedings

On September 21, 2004, Sidney filed a complaint seeking to confirm the full arbitration award. She contended that Allstate had not "pled or tried" any offset to the arbitration panel and had not yet paid her the full amount due under the award. She requested confirmation of the full award plus costs, attorney's fees, and prejudgment interest as well as payment of arbitrators' fees, post-award fees, costs, and interest.

On October 26, 2004, Allstate forwarded a $95,727.82 payment to Sidney. That amount consisted of $68,432 (the amount of the origi-

nal arbitration award less the $50,000 settlement) plus interest and attorney's fees.[2]

Allstate then answered Sidney's complaint. It alleged that Sidney was entitled only to the amount of the arbitration award over and above the $50,000 settlement and that Sidney was not entitled to additional payments (or "add-ons") of prejudgment interest, attorney's fees, or costs on the settlement. Shortly thereafter, Allstate filed an application to vacate, modify, or remand the arbitration award for clarification. Sidney filed a limited opposition, noting that Allstate had not made a timely request to the arbitration panel to offset the $50,000 award.

In March 2005 Allstate moved for summary judgment, arguing that (1) Alaska's UIM statutory scheme required that Sidney's $50,000 settlement be deducted from the full arbitration award before determining the principal amount due under her UIM coverage; (2) Sidney was not entitled to prejudgment interest or attorney's fees on the settlement; and (3) Sidney was not entitled to costs incurred in the arbitration proceeding.

In April 2005 Sidney moved to reduce the full arbitration award to judgment. She asserted that (1) she was entitled to add-ons on the full amount of the arbitration award prior to any claimed offset; (2) Allstate waived any claim for reduction or offset by failing to raise the issue at arbitration; and (3) alternatively, Allstate was only entitled to offset the $25,000 liability payment portion of the settlement from the award. She also requested costs and fees for both the arbitration and the confirmation proceedings.

On May 23, 2005, following oral argument, Superior Court Judge Sharon Gleason issued an order deducting the $50,000 settlement from Sidney's gross arbitration award. But Judge Gleason also concluded that Sidney was first entitled to prejudgment interest, costs, and attorney's fees calculated on the

---

1. The award included $33,432 for past economic loss; $10,000 for future economic loss; $65,000 for past non-economic loss; and $10,000 for future non-economic loss.

2. Allstate forwarded one check of $70,617.12 (equaling the first $50,000 of its payment plus prejudgment interest and attorney's fees) from Sidney's automobile policy and one check of $25,110.70 (the remaining $18,432 of its $68,432 payment plus prejudgment interest and fees) from her PUP policy.

full amount of the award. The court declined to award Sidney the costs she incurred during the arbitration proceedings.

Allstate then moved for partial reconsideration on the issue of add-ons on the $50,000 settlement. Judge Gleason denied the motion, citing our analysis in *Coughlin v. Government Employees Insurance Co. (GEICO)* [3] and *Ruggles ex rel. Estate of Mayer v. Grow* [4] but also "readily acknowledge[d] that reasonable minds could differ on this issue."

Sidney requested entry of final judgment, determination of prevailing party status, and an award of attorney's fees and costs. Allstate cross-moved for a determination of prevailing party status. The superior court entered judgment for Sidney in the amount of $15,440 plus post-judgment interest. Sidney objected to the court's calculations and moved to amend the judgment. Allstate filed a partial opposition, but agreed that the court had erred in its calculations and submitted its own proposed calculations.

The parties then entered into a stipulation that the judgment and calculations as set forth in Allstate's partial opposition "reflect [ ] the correct calculation of the final judgment in view of the court's rulings on the merits." Pursuant to the parties' stipulation, the court issued an amended final judgment on August 31, 2005, generally adopting Allstate's calculations and entering judgment for Sidney in the amount of $16,569.17.

Both parties now appeal the amended final judgment and the superior court's order on summary judgment. Sidney contends that the trial court erred in (1) reducing her arbitration award by $50,000; (2) offsetting the $25,000 medical payments claim; (3) calculating fees and interest on the $50,000 settlement rather than on the full arbitration award; (4) calculating interest on past damages; (5) refusing to award Sidney attorney's fees based on the total arbitration award plus interest; (6) refusing to award her the costs of the arbitration and the confirmation proceedings; and (7) refusing to award Sidney enhanced or full attorney's fees.

Allstate cross-appeals, contending the court erred in (1) ordering Allstate to pay prejudgment interest and attorney's fees on the $50,000 settlement; (2) awarding interest on the $25,000 in medical payments; and (3) finding Sidney to be the prevailing party.

## III. STANDARD OF REVIEW

■ We review the superior court's grant of summary judgment *de novo*,[5] and will affirm if there are no genuine issues of material fact and the winning party was entitled to judgment as a matter of law.[6]

■ Judicial review of arbitration awards is closely circumscribed.[7] The superior court has limited authority to correct and review arbitration awards and may only vacate, modify, or correct an arbitration award pursuant to narrow statutory parameters.[8] We review a superior court's review of an arbitration decision *de novo* when it deals with questions of law and contract interpretation.[9]

■ Whether a dispute is arbitrable [10] and whether a superior court's decision to affirm

3. 69 P.3d 986, 991–92 (Alaska 2003).

4. 984 P.2d 509, 512 (Alaska 1999).

5. *Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 464 (Alaska 1997).

6. *Id.*

7. 2 ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 26.2 at 457 (3d ed. 2005) ("The grounds for a modification or correction by a court are relatively narrow and are specifically limited so as not to impinge on matters which go to the merits of an award.").

8. AS 09.43.120 provides a limited set of circumstances under which the court shall vacate an award, including where the award was procured by fraud. AS 09.43.130 provides that upon application within ninety days of delivery of the award, the court shall modify or correct the award if there was an evident miscalculation or evident mistake in the subject of the award, the arbitrators exceeded their authority and awarded upon a matter not submitted to them, or the award is imperfect in a matter of form.

9. *Univ. of Alaska v. Alaska Cmty. Colleges' Fed'n of Teachers, Local 2404*, 64 P.3d 823, 825 (Alaska 2003).

10. *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 111 P.3d 337, 340 (Alaska 2005).

an arbitration award is correct[11] are both questions of law that we also review *de novo*.

"In the absence of evidentiary dispute, the existence of an offset presents a question of law."[12] We apply our independent determination to questions of statutory and contract interpretation,[13] and adopt the rule of law "most persuasive in light of precedent, reason, and policy."[14]

The determination of whether a prevailing party is entitled to prejudgment interest is a question of law to which we apply our independent judgment, keeping in mind that such awards should be denied only to "avoid an injustice."[15]

We review the superior court's determination of prevailing party status, as well as its awards of costs and fees, for abuse of discretion.[16] We will find an abuse of discretion only where the court's determination is manifestly unreasonable[17] or when our review of the entire record leaves us with a definite and firm conviction the trial court erred.[18]

## IV. DISCUSSION

In 1990 Alaska adopted an "excess" coverage approach to underinsured motorist insurance.[19] The excess approach "seeks to maximize the potential for full compensation by allowing the purchaser of UIM insurance to supplement available liability payments with UIM payments to the extent necessary to cover all actual damages."[20] Alaska Statute 28.20.445 provides that UIM coverage cannot be drawn upon until "the limits of liability of all bodily injury and property damage liabili-

ty bonds and policies that apply have been used up by payments, judgments or settlements."[21] Thus, an insured must use up, or "exhaust," available underlying liability policy limits before she can pursue UIM benefits.[22] In this case, neither party disputes that Sidney's settlement with Safeco exhausted the Safeco policy limits and triggered Sidney's right to pursue UIM benefits.

### A. The Superior Court Correctly Reduced the Arbitration Award by the $50,000 Liability Settlement.

We first turn to the question of whether the superior court correctly deducted the $50,000 liability settlement from Sidney's arbitration award in determining the amount of UIM benefits Allstate was required to pay. Sidney contends that because Allstate failed to present evidence of this "offset" or raise the issue of the $50,000 settlement at arbitration, Allstate is required to pay the full arbitration award. Allstate counters that the arbitration panel was asked to determine the amount of "total damages" Sidney incurred as a result of her accident, rather than what portion of her damages were payable under her UIM coverage, and thus the court properly reduced the full arbitration award by the amount of the settlement. Allstate further argues that the panel lacked the authority to determine the effect of the liability settlement or to consider offset claims, and that the reduction is required under statutory limits regarding UIM recovery. We need not address the precise question of whether the arbitration panel had the authority to consider the effect of the $50,000

**11.** *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482 (Alaska 2006).

**12.** *Falconer v. Adams*, 974 P.2d 406, 410 n. 2 (Alaska 1999).

**13.** *Holderness v. State Farm Fire & Cas. Co.*, 24 P.3d 1235, 1237–38 (Alaska 2001).

**14.** *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 512 (Alaska 1998) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**15.** *Cole v. Bartels*, 4 P.3d 956, 958 (Alaska 2000).

**16.** *Alaska Constr. & Eng'g, Inc. v. Balzer Pacific Equip. Co.*, 130 P.3d 932, 935 (Alaska 2006).

**17.** *Bromley v. Mitchell*, 902 P.2d 797, 804 (Alaska 1995).

**18.** *Alderman v. Iditarod Props.*, 104 P.3d 136, 140 (Alaska 2004).

**19.** *Simmons*, 953 P.2d at 514.

**20.** *Id.* at 517.

**21.** AS 28.20.445(e)(1).

**22.** *Coughlin v. Gov't Employees Ins. Co. (GEICO)*, 69 P.3d 986, 988–89 (Alaska 2003).

settlement because we conclude that the arbitration panel determined a single issue—the amount of Sidney's total damages—that did not require nor implicate the panel's consideration of any offsets or reductions.

 Arbitrators are afforded broad discretion to fashion remedies,[23] and we recognize that courts considering the arbitrability of offsets and reductions have routinely upheld arbitrators' authority to determine these issues in similar contexts.[24] In *Wing v. GEICO Insurance Co.*[25] we held that where an insurance policy granted the arbitration panel the authority to determine "the amount payable" under the policy, the panel properly adjusted the preliminary award downward by providing for offsets of the insurer's previously awarded damages. But we have also expressed deference to arbitrators' determinations of the issue(s) before them and held that "an arbitrator's interpretation of the question presented ... should not be subjected to plenary review."[26] We therefore accord arbitrators' interpretations of the issues "significant weight."[27]

Generally, the "terms of the endorsement are controlling in the determination of what matters or issues are to be submitted to arbitration between the insured claimant and the insurance carrier, except as mandated by statute or by regulation."[28] The UIM insurance provision of the Allstate policy provides: "[T]he right to benefits and the amount payable will be decided by agreement between the insured person and Allstate. If an agreement can't be reached, the decision will be made by arbitration." The policy later provides that "[i]f the insured person or we don't agree on that person's right to receive any damages *or* the amount ... the disagreement will be settled by arbitration." (Emphasis added.) The language of the Allstate policy grants the arbitration panel authority to determine two different and distinct concepts: (1) the total amount of damages to which an insured is entitled (from the tortfeasor) *and* (2) amounts payable under the insurance policy (by the UIM insurer). While these policy terms are related, they are not mutually exclusive.[29]

In her appeal, Sidney conceded (as she did in her arguments before the arbitration panel) that "[t]he only issue to be determined at arbitration was Sidney's damages resulting from the January 13, 2000 car wreck." In her arbitration brief, Sidney asserted that "the sole issue for the panel to determine is that of damages. How much." Neither party contends that the panel considered—or

---

**23.** *Alaska Pub. Emloyees Ass'n v. State Dep't of Envtl. Conservation,* 929 P.2d 662, 666 (Alaska 1996).

**24.** *See Klimek v. Horace Mann Ins. Co.,* 14 F.3d 185, 189 (2d Cir.1994) (under broad arbitration clause insurer's offset claims should be decided by arbitrators along with other defenses of insurer to its duty to provide coverage); *Zimmerman v. Illinois Farmers Ins. Co.,* 317 Ill.App.3d 360, 251 Ill.Dec. 57, 739 N.E.2d 990, 996 (2000) (where parties agreed to submit "amount of payment which may be owing under this coverage" to arbitration, insurer required to submit setoff and other issues); *Cole v. Inland Nat'l Ins. Co.,* 133 Ill.App.2d 745, 273 N.E.2d 65, 68 (1971) (insurer required to raise setoff argument during arbitration to avoid waiver); *In re Liberty Mut. Ins. Co. v. Tetteh,* 277 A.D.2d 239, 240, 716 N.Y.S.2d 399 (N.Y.App.Div.2000) (extent of insurer's liability and availability of offsets in UIM arbitration matter determined by arbitrator). *But see Assicurazioni Generali, S.P.A. v. Clover,* 195 F.3d 161, 165 (3d Cir.1999) (issue of UIM coverage and setoff not subject to arbitration under clause permitting arbitration of damages disputes).

**25.** 17 P.3d 783, 786–87 (Alaska 2001).

**26.** *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n.,* 732 P.2d 1090, 1096 (Alaska 1987); *see also id.* at 1096 n. 8 ("[I]f the arbitrator had adhered to a strict interpretation of the submitted issue and limited its interpretation [to a solitary issue] we would likewise defer to this construction of the issue for arbitration."); *Sea Star Stevedore Co. v. Int'l Union of Operating Eng'rs, Local 302,* 769 P.2d 428, 431 (Alaska 1989) (noting arbitrator does not have authority to reach merits of grievance not submitted).

**27.** *Sea Star Stevedore Co.,* 769 P.2d at 431 n. 7 (quoting *Pub. Safety Employees,* 732 P.2d at 1097).

**28.** 8 Patrick D. Kelly, Blashfield Automobile Law and Practice § 332.6 at 381 (3d ed.1987).

**29.** *See Zimmerman v. Illinois Farmers' Ins. Co.,* 317 Ill.App.3d 360, 251 Ill.Dec. 57, 739 N.E.2d 990, 995 (2000) (discussing distinction between damages and payment and noting insured entitled to "damages" from tortfeasor, but "payment" from UIM insurer).

was asked to consider—the amount of *benefits payable* (or "amounts payable") under the Allstate policy. Moreover, the panel's award plainly stated that "Joanne Sidney has been damaged and is entitled to an award of damages ... [totaling] $118,432."

The scope of the panel's award was confined to a determination of damages that did not require consideration of any alleged offsets.[30] And unlike in *Wing v. GEICO Insurance Co.*,[31] where we held an arbitration panel had acted within its authority in reducing a party's award following receipt of briefing on costs, fees, and offsets, here it appears the panel neither invited briefing on nor was asked to consider any such issue.

While the panel may very well have had the authority to consider the effect of the $50,000 settlement on Sidney's damages awards, it did not do so in this case. As a result, we conclude that Allstate did not waive its right to assert this issue.[32]

■ Moreover, the trial court's reduction was plainly proper in light of the UIM statutory framework, the purpose underlying UIM coverage, and the plain terms of the Allstate policy. Alaska Statute 28.20.445(e)(1) provides that underinsured coverage "may not apply ... until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments or settlements...." And AS 28.20.445(a)(1) provides that the maximum liability of a UIM carrier is the lesser of "(1) the difference between the amount of the covered person's damages ... and the amount paid to the covered person by or for a person who is or may be held legally liable for the damages; and (2) the applicable limit of liability of the uninsured and underinsured motorist cover-

age." Allstate's policy mirrors this same language:

> [Allstate's] limit of liability will be the lesser of:
>
> 1. The difference between the amount of an insured person's damages ... and the amount paid to that insured person for such damages, by or for a person who is or may be held legally liable for damages ... and
>
> 2. The applicable limit of liability for this coverage.

The Allstate policy further notes that amounts payable under the policy apply "over and above any amounts available to the insured person ... [b]y or for a person who is or may be held legally liable for damages." This language makes clear that Allstate's *maximum* liability in this case is the difference between Sidney's total damages—$118,432—and the amount previously satisfied by the Safeco settlement—$50,000.

It would be unreasonable to conclude that Sidney incurred damages of $118,432, but that upon exhausting $50,000 policy limits she was entitled to a UIM award that failed to reflect her receipt of the underlying benefits. It would also run counter to Alaska's excess approach to UIM coverage.[33] We therefore affirm the superior court's decision to reduce Allstate's payment by the amount of the liability settlement.

### B. Allstate Is Not Estopped from Reducing Its UIM Payment by the $25,000 Medical Payments Coverage.

■ Sidney alternatively contends that even if the court could have reduced her award, Allstate is estopped from receiving an offset of the $25,000 in medical payments

---

**30.** While the arbitration demand charging the panel with the issue(s) to be addressed at the hearing is absent from the record, our review of the record as a whole readily supports this conclusion.

**31.** 17 P.3d 783, 786–87 (Alaska 2001).

**32.** We recognize that other courts have held where an arbitrator had broad authority under the contract, the parties were obligated to raise any offset claims. *See Zimmerman*, 251 Ill.Dec. 57, 739 N.E.2d at 992 ("[P]arties may not sub-

vert the arbitration process by failing to raise a matter which falls within the ambit of the issues submitted, then later asking the court to determine the matter in a subsequent proceeding.") (quotations omitted).

**33.** "Excess coverage ... strives to provide additional coverage, as needed to fully compensate injured motorists after available liability coverage has been completely exhausted." *Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 832 (Alaska 2001).

coverage it provided because it never conceded those funds were an undisputed aspect of Sidney's damages at arbitration. Allstate responds that because Sidney is required to exhaust liability policy limits before pursuing UIM benefits, and because the $25,000 in medical payments is part of the underlying $50,000 settlement, the medical payments are a "necessary component" of Sidney's UIM claim. We conclude that Sidney's argument fails.

 The elements of equitable estoppel are "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." [34] We have also adopted the doctrine of "quasi-estoppel," which applies where "the existence of facts and circumstances makes the assertion of an inconsistent position unconscionable." [35] Sidney contends that allowing Allstate to offset the $25,000 in medical payments results in a windfall to Allstate because there is no evidence that the "past medical expenses" awarded by the arbitration panel are for the same medical expenses Allstate originally paid.

As discussed above, Sidney is precluded from pursuing UIM coverage unless and until she exhausts underlying liability policy limits. If Sidney had received $25,000 directly from Safeco and nothing more, she would have failed to exhaust the policy limits and would be precluded from pursuing UIM coverage altogether. But Safeco assumed responsibility for satisfying Allstate's subrogated claim, and in so doing the $25,000 in medical payments became a requisite element of Sidney's UIM coverage claim. We therefore reject Sidney's argument that All-

state is not entitled to offset the $25,000 it paid for her medical expenses.[36]

## C. Sidney Is Not Entitled to Prejudgment Interest and Attorney's Fees on the $50,000 Settlement, with One Exception.

### 1. Sidney was not underinsured as to add-ons to the Safeco policy.

 Allstate's cross-appeal contends that the superior court erred in ordering it to pay Sidney prejudgment interest and attorney's fees on the underlying $50,000 liability settlement. Allstate makes a number of arguments in support of its claim, including that (1) the add-ons are "amounts payable" under the Safeco liability policy and are therefore excluded from UIM recovery under Alaska's UIM statutory scheme; (2) allowing Sidney to recover these sums undermines the purpose of UIM coverage; and (3) allowing claimants to recover add-ons under these circumstances will ultimately increase the cost of UIM insurance. Sidney responds that under *Coughlin v. Government Employees Insurance Co. (GEICO )* [37] and the UIM statutory framework, she is entitled to recover add-ons on the settlement from Allstate. For the reasons set forth below, we reject her argument and reverse the award of add-ons in all but one respect.

In *Coughlin* we concluded that "costs, interest, and attorney's fees are not to be included in determining whether policy limits have been exhausted for the purpose of drawing upon underinsured motorist coverage" in deciding that a party had exhausted a $50,000 liability policy where the party settled with the liability insurer for $40,000 plus the insurer's assumption of a $10,000 medical lien.[38] We noted that while add-ons

---

34. *Maynard v. State Farm Mut. Auto. Ins. Co.,* 902 P.2d 1328, 1330 (Alaska 1995) (quoting *Jamison v. Consol. Utils., Inc.,* 576 P.2d 97, 102 (Alaska 1978)).

35. *Jamison,* 576 P.2d at 102.

36. In addition, Sidney has not provided sufficient evidence to support her estoppel claim. She provides no evidence that she relied on Allstate's position or that she did so to her detriment, and offers no support for her argument that an insurer must concede medical payments are an undisputed aspect of a party's damages in order to

later receive a credit or offset for an initial payment of benefits. *Cf. Jamison,* 576 P.2d at 102–03 (discussing relevant criteria for quasi-estoppel claim, including whether party asserting inconsistent position gained advantage through first position, magnitude of inconsistency, changed circumstances, whether inconsistency was relied on by party to his detriment, and whether first assertion made with full knowledge of facts).

37. 69 P.3d 986 (Alaska 2003).

38. *Id.* at 989.

were incorporated into overall policy limits "to the extent that insurers were legally obligated to pay [them]," they did not bear on the question of whether the "limits of liability ... have been used up" for the purposes of triggering the exhaustion statute.[39] That statute, AS 28.20.445(e)(1), provides that UIM coverage may not apply until "the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments or settlements." We looked to the purposes of the statute—to ensure that "UIM coverage is secondary rather than primary coverage while at the same time making the benefit of UIM coverage broadly available"—in deciding that "limits of liability" meant facial coverage and not add-ons.[40] Thus, "policy limits" were exhausted for the purposes of pursuing UIM coverage when the face value of the policy was satisfied, independent of any additional attorney's fees or prejudgment interest.[41]

The question in *Coughlin* concerned what threshold triggered a UIM provider's obligation to provide benefits, not what amounts are payable once UIM coverage is triggered. Contrary to Sidney's contention, *Coughlin* is not dispositive of the question presented here: whether an insured who exhausts the facial limits of the underlying policy is entitled to UIM benefits for amounts that were otherwise recoverable under the liability policy in the first instance. This issue is governed by AS 28.20.445(b), which provides:

An amount payable under the uninsured and underinsured motorist coverage *shall be excess to an amount payable* under automobile bodily injury, death, or medical payments coverage ... and *may not duplicate* amounts paid or payable under val-

id and collectible automobile bodily injury [coverage]. . . .

(Emphasis added.)

■ Unlike subsection .445(e)(1), subsection .445(b) speaks of "amounts payable" rather than "limits of liability," a difference that may be readily understood when considered in light of the purpose of UIM insurance. Alaska's UIM coverage is premised on the notion that an injured party may be entitled to UIM coverage "to the extent that the tortfeasor's liability insurance coverage is *insufficient* to compensate the injured person fully for [their] loss. . . ."[42] As aptly noted by one commentator, the "[f]undamental characteristic of the underinsured motorist insurance is that it is only relevant when the tortfeasor's insurance is not adequate to provide indemnification."[43] Thus, where a liability policy provides coverage for add-ons, the "amounts payable" may be greater than the policy's "limits of liability" (as defined in *Coughlin* to equal facial limits).[44]

Allstate notes that the use of the term "amounts payable" in subsection .445(b) indicates that coverage provided by a UIM insurer will be over and above any amounts available under an underlying liability policy, and that here, because attorney's fees and interest were available to Sidney under the Safeco policy, Allstate is not liable for those sums. The Allstate policy includes language similar to that provided in subsection .445(b): "Any amounts otherwise payable for damages under this coverage shall apply over and above any amounts available to the insured person because of the bodily injury ... [b]y or for a person who is or may be held legally liable for damages."[45] Both the Allstate policy and the statutory language in subsection .445(b) contemplate that amounts available to Sidney under the Safeco liability

**39.** *Id.* at 991.

**40.** *Id.*

**41.** *Id.* at 992.

**42.** *Progressive Ins. v. Simmons,* 953 P.2d 510, 517 n. 6 (Alaska 1998) (emphasis added) (quoting *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737, 748 (1990)).

**43.** 2 ALAN I. WIDISS & JEFFRY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 26.2 at 457 (3d ed.2005).

**44.** *See Coughlin,* 69 P.3d at 991–92.

**45.** Allstate notes that Sidney's personal umbrella policy does not contain UIM coverage but concedes that under our case law, the terms of coverage are provided by statute. *See Holderness v. State Farm Fire & Cas. Co.,* 24 P.3d 1235, 1241 (Alaska 2001).

policy may be broader than the policy's "limits of liability" as interpreted in *Coughlin.* That we interpreted "limits of liability" to exclude add-ons in determining *when* a liability policy is exhausted does not lead to the conclusion that the same definition applies in the context of determining what amounts are recoverable.[46]

It is important to note that the Safeco liability policy is absent from the record. In its cross-appeal, Allstate notes that "Sidney admits" prejudgment interest and attorney's fees were available to her under the Safeco policy. Sidney does not dispute Allstate's allegation on this point but responds that "[Allstate] offered no evidence that the tortfeasor policy includes interest as part of the facial value of the policy." We conclude that Sidney's failure to directly dispute that prejudgment interest and attorney's fees were available to her under the Safeco policy,[47] her election to forgo those amounts when she settled, and the plain language of the Allstate UIM policy support the conclusion that Sidney is not entitled to recover add-ons on her liability settlement from Allstate. However, nothing in our conclusion alters *Coughlin's* threshold determination of *when* UIM coverage may be pursued.[48]

Because Sidney was entitled to pursue add-ons from Safeco but elected not to do so, she is not "underinsured" as to those amounts.[49] To conclude otherwise would conflate the purposes of primary liability and UIM insurance and award Sidney sums she elected to forgo in her choice to settle for facial policy limits. Allowing Sidney to recover all of the add-ons at issue from Allstate would permit Sidney to render herself artificially underinsured as to those amounts and force Allstate to provide for overlapping coverage of select amounts where none should exist.[50] It also awards her prejudgment interest on sums which she never lost the use of in the first instance.[51] Because Sidney was not "underinsured" with respect to the sums at issue, we conclude that with the one exception discussed below, she is not entitled to UIM recovery of those amounts.[52]

## 2. Sidney is entitled to a pro rata award of attorney's fees and costs from Allstate.

While we conclude that Sidney is not entitled to receive from her UIM carrier add-ons to the liability settlement, we also recognize that in pursuing the liability settlement Sidney procured a direct benefit for Allstate. Is she entitled to a pro rata award of attor-

**46.** *See Coughlin,* 69 P.3d at 992.

**47.** There is no indication that Sidney, as the injured party who settled with Safeco, did not have access to the complete terms of the Safeco policy. But she has wholly failed to dispute Allstate's allegation or directly claim that the add-ons were unavailable to her under the Safeco policy. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) ("Failure to argue a point constitutes abandonment of it.").

**48.** Under our holding today, a party pursuing UIM coverage is required to do nothing more or less than what is required under *Coughlin:* exhaust facial policy limits. Whether she (1) exhausts the underlying policy via settlement for facial limits; (2) exhausts the underlying policy via settlement for facial limits and add-ons; or (3) proceeds to trial, receives a favorable verdict, and recovers full policy limits plus add-ons, she is in the same position to the extent that in each situation she is then eligible to pursue UIM recovery. The difference is that in the first scenario, the insured forfeited recovery of add-ons. But in all cases, the UIM coverage is triggered the moment facial limits are exhausted.

**49.** *See State Farm Mut. Auto. Ins. Co. v. Lestenkof,* 144 P.3d 504, 509 (Alaska 2006) (holding that UIM provider not liable for fees where party not "underinsured" as to those amounts).

**50.** A party cannot "create an underinsured situation upon accepting a less than liability limits settlement in an amount under the victim's own policy coverage." 8 PATRICK D. KELLY, BLASHFIELD AUTOMOBILE LAW & PRACTICE § 315.4 at 550 (3d ed.1987).

**51.** Prejudgment interest is awarded to compensate a party for the loss of use of money. *Liimatta v. Vest,* 45 P.3d 310, 321(Alaska 2002). Nowhere does Sidney assert that she was deprived of the use of the $25,000 in medical payments such that an award of prejudgment interest on this amount is proper.

**52.** Sidney contends that the court applied an incorrect prejudgment interest rate when calculating the amount of add-ons due on the liability settlement. Because we decide that Sidney is not entitled to recovery of prejudgment interest in the first instance, we do not address this argument.

ney's fees and cost for this work? We conclude that she is.

In *Cooper v. Argonaut Insurance Co.,*[53] we interpreted a workers' compensation statute as providing that, where an injured employee is ordered to reimburse compensation as the result of a third-party recovery against a tortfeasor, the amount reimbursed must be reduced by a pro rata share of the attorney's fees incurred by the injured employee in recovering against the tortfeasor.[54] In *Cooper,* appellant's husband was killed while working and appellant was paid workers' compensation benefits through her husband's employer's insurer, Argonaut. After appellant filed suit against a third-party tortfeasor and the case settled, Argonaut sued Cooper to recover the amount of benefits paid.[55] On appeal, we required a deduction from the amount Cooper had to reimburse Argonaut to reflect the litigation expenses Cooper incurred that were attributable to Argonaut's share of the recovery. In so holding, we recognized that if the employer (or the insurance carrier) were not required to pay its pro rata share of litigation expenses, "the entire burden of the litigation would be borne by the employee" and "[t]he carrier would take the benefit of the employer's premium and the employee's litigation effort."[56]

We later discussed this reasoning in another case affirming application of the "common fund doctrine," which provides that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[57] We noted that one rationale underlying the common fund doctrine was to avoid unjust enrichment[58] and stated that the doctrine was implicated "any time one litigant's success releases well-defined benefits for a limited and definable group of others."[59]

Our review of the record and our case law on this issue convinces us that the rationale underlying these cases applies equally to the facts presented here. While neither party addressed this issue below, the parties disputed who was entitled to add-ons on the $25,000 medical payments portion of the liability settlement and the superior court's award invokes analogous case law on this same subject. Judge Gleason's order awarding Sidney add-ons noted that her decision was "consistent with the supreme court's analysis in this area as set forth in both *Coughlin v. Government Employees Insurance Co.*[60] and *Ruggles v. Grow.*"[61]

While *Ruggles* does not specifically address the common fund doctrine, it does discuss an insured's right to recover fees incurred in pursuing and recovering her insurer's subrogated claim:

> When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim. The insurer effectively receives an assignment of its expenditure by operation of law and contract. If the insurer does not object, the insured may include the subrogated claim in its claim against a third-party tortfeasor. Any proceeds recovered must be paid to the insurer, *less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim.*[62]

We therefore conclude that Sidney is entitled to recover from Allstate a pro rata share of the expenses she incurred seeking recovery from Safeco.

## D. The Superior Court Correctly Refused To Award Sidney the Costs of the Arbitration Proceeding.

Sidney next appeals the superior court's decision not to award her the costs

---

53. 556 P.2d 525 (Alaska 1976).

54. *Id.* at 525–26.

55. *Id.* at 526.

56. *Id.* at 527.

57. *Edwards v. Alaska Pulp Corp.,* 920 P.2d 751, 754 (Alaska 1996) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)).

58. *Id.* at 754.

59. *Id.* at 755.

60. 69 P.3d 986, 991–92 (Alaska 2003).

61. 984 P.2d 509, 512 (Alaska 1999).

62. *Id.* at 512 (emphasis added and citations omitted).

she incurred in arbitration. But Sidney did not request an award of costs from the arbitration panel, and instead asked for arbitration costs in her April 2005 motion for summary judgment. The superior court rejected Sidney's request because she failed to pursue costs before the arbitration panel.

■ Because Allstate informed Sidney that it would seek a trial *de novo* as provided for under the terms of its contract,[63] Sidney claims that (1) the arbitration panel "may have" lacked jurisdiction to determine costs, (2) Allstate's ultimate decision not to proceed with a trial cannot be used to prejudice her decision not to requests costs from the panel,[64] and (3) the superior court had the authority to enter an award for arbitration costs. But there is nothing to support her suggestion that Allstate's actions somehow prevented Sidney from seeking costs from the arbitration panel.

Alaska Statute 09.43.100, which provides for fees and expenses of arbitration, states that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." The Allstate policy states that "[a]ll expenses and fees, not including counsel fees or adjuster fees, incurred because of arbitration, will be paid as determined by the arbitrator." The panel's award ordered Allstate to pay the arbiters' fees and stated that "the parties can submit motions for attorney's fees and costs, if necessary." Thus, regardless of Allstate's actions in deciding whether to pursue a trial *de novo*, Sidney had the duty to seek the costs of the arbitration if she wished to obtain them. But Sidney failed to submit a motion for costs to the panel.

Moreover, the statutes that Sidney relies upon to assert that the trial court could independently award the costs of the arbitration are inapposite. Alaska Statute 09.43.170 grants the courts jurisdiction to enforce arbitration agreements and to enter judgment on an award, but does not grant independent jurisdiction to award costs where a party has failed to request them from the arbitrator. Alaska Statute 21.89.020(f)(1) merely provides that arbitration expenses incurred in insurance disputes "shall be paid as determined by the arbitrator." Neither statute mandates the court's award of costs here. The trial court ruled that where a party desires costs associated with the arbitration, it is incumbent on the party to move for them. This Sidney failed to do. We therefore affirm the superior court's refusal to award Sidney her costs of arbitration.

### E. Prevailing Party Status and the Court's Refusal To Award Sidney Enhanced Attorney's Fees

#### 1. Costs of the confirmation proceeding

Sidney next argues that the trial court erred in failing to award her the costs of the confirmation action in its August 10, 2005 final judgment. But the court's amended final judgment, entered pursuant to the parties' stipulation, did in fact award Sidney the costs of the confirmation proceedings in the amount of $503.38. However, because we vacate the court's order finding Sidney to be the prevailing party in this case, we vacate the court's award of the costs of the confirmation action to Sidney and remand for a new determination of prevailing party status as set forth below.

#### 2. Prevailing party status

Allstate contends that even if the court correctly decided summary judgment in Sidney's favor, and Sidney was held to be enti-

---

63. The "trial *de novo*" clause in the Allstate contract provides that "when any arbitration award exceeds the Financial Responsibility limits in the State of Alaska, either party has a right to trial on all issues in a court of competent jurisdiction."

64. We decline Sidney's two-sentence invitation, contained in a footnote, to rule the trial *de novo* clause unenforceable as a matter of law. She did not raise this argument to the superior court and has further failed to give the issue sufficient attention to merit our appellate review. *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

tled to add-ons on the full amount of the arbitration award, the superior court erred in its determination of prevailing party status. The superior court found Sidney to be the prevailing party and awarded Sidney attorney fees in both its original final judgment and in the subsequent amended final judgment. Because we reverse the superior court's order awarding Sidney all of her requested add-ons on the liability settlement, we vacate the court's determination that Sidney was the prevailing party and the award of attorney's fees in her favor.[65] On remand the superior court should determine who is the prevailing party in this action and award attorney's fees accordingly.[66]

### 3. The superior court did not err in refusing to award Sidney enhanced attorney's fees.

Sidney's final argument is that the court erred in awarding her attorney's fees under the "deficiency without trial" schedule of Civil Rule 82(b)(1) rather than awarding her actual fees under Rule 82(b)(3). In her reply brief she alternatively contends that the court should have followed Rule 82(b)(2) and awarded her a "certain percentage" of her actual fees. She claims that full fees were proper here because of the intricacy of the legal issues, the length in time between the arbitration award and final judgment, the amount of time invested in the case, Allstate's "erroneous" briefing, and the utility of our decision in setting precedent for future calculation of UIM arbitration awards.

But while Sidney requested full attorney's fees in her motion to the superior court, she did so in a one sentence statement: "Plaintiff requests an award for her actual attorney's fees and costs." She provided no justification for varying the presumptive fee award, offered no authority in support of her argument, and pointed to no authority in support of her request. Not until filing her reply to Allstate's opposition to her motion for attorney's fees did she articulate a basis for departing from Rule 82(b)(1) or raise any arguments in support of her original, cursory statement on this issue. In light of her failure to sufficiently raise this issue, we conclude her argument on this point is waived.[67]

## V. CONCLUSION

The arbitration panel determined the total amount of damages Sidney incurred as a result of her accident, but was not asked to consider or weigh the applicability of any offsets. Under Alaska's statutory UIM scheme, Allstate as the provider of underinsured motorist coverage is liable for only that portion of damages in excess of available liability insurance. Because Sidney had already received the benefit of the $50,000 settlement, we AFFIRM the superior court's decision to reduce Allstate's payment by $50,000. But because she elected to forgo payment of additional prejudgment interest and attorney's fees on that amount, we REVERSE in all but one respect the court's decision requiring Allstate to pay add-ons. Because Sidney procured a benefit for Allstate in entering into settlement with Safeco, we hold that she is entitled to a pro rata share of attorney's fees from Allstate. We REMAND this issue to the superior court for a determination of the amount of this pro rata share.

Because Sidney did not seek the costs of the arbitration before the arbitration panel, we AFFIRM the trial court's refusal to award Sidney the costs of the arbitration.

Finally, we VACATE the award of prevailing party attorney's fees and REMAND the

---

**65.** *See Romulus v. Anchorage Sch. Dist.,* 910 P.2d 610, 619 (Alaska 1996) (vacating attorney's fee award and remanding for new determination of prevailing party status in light of decision to reverse superior court on issue of party's unpaid suspension).

**66.** *See Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989) (granting superior court broad discretion in determining prevailing party).

**67.** *See State Farm Auto. Ins. Co. v. Lawrence,* 26 P.3d 1074, 1076 (Alaska 2001) (holding that party waived argument by failing to adequately address issue below); *Adamson,* 819 P.2d at 889 n. 3 (holding that where point given only cursory treatment in argument portion of brief, waiver not correctable by arguing issue in reply brief).

issue to the superior court for determination of prevailing party in light of today's opinion.

MATTHEWS and BRYNER, Justices, not participating.